UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #
DATE FILED: 12-12-19

ALTON DAVIS,

            Plaintiff,

    -against-

AUSA JOHN O'DONNELL; ATF AGENT
JASON ZAMALOFF,

            Defendants.

15-CV-3077 (LAP)

ORDER OF DISMISSAL

LORETTA A. PRESKA, Senior United States District Judge:

    Plaintiff, currently incarcerated in U.S. Penitentiary
Administrative Maximum ("ADX") in Florence, Colorado, brings
this action pro se. Plaintiff alleges that the Bureau of
Prisons imposed Special Administrative Measures ("SAMs") on him
from 2010 to 2014, on the ground that while detained at the
Metropolitan Correctional Center ("MCC"), Plaintiff used the
telephone or mail to attempt to order the murder of Assistant
United States Attorney ("AUSA") John O'Donnell ("O'Donnell"),
who was the lead prosecutor in Plaintiff's criminal case, United
States v. Davis, No. 06-CR-911 (WHP) (S.D.N.Y.), and Jason
Zamaloff ("Zamaloff"), an agent with the Bureau of Alcohol,
Tobacco and Firearms ("ATF") who testified at the criminal
trial. Plaintiff contends that the failure of the Bureau of
Prisons to provide him with the evidence on which the SAMs were
based demonstrates that Defendants O'Donnell and Zamaloff
fabricated the evidence.

Before filing this action, Plaintiff brought a civil rights action in Colorado challenging the imposition and execution of the SAMs. Davis v. Holder, No. 12-CV-2122, 2014 WL 1713429 (D. Co. Apr. 23, 2014). The District of Colorado granted Defendants' motion to dismiss Plaintiff's First, Fourth, Fifth, Sixth, and Eighth Amendment claims with prejudice for failure to state a claim but dismissed the individual-capacity claims against O'Donnell and Zamaloff for lack of personal jurisdiction.[1]

By order dated May 26, 2015, the Court held that Plaintiff's complaint failed to state a claim on which relief could be granted, among other reasons, because many of Plaintiff's claims had already been adjudicated and he could not relitigate them. The Court nevertheless granted Plaintiff leave to file an amended complaint, which Plaintiff has done. For the reasons set forth below, the Court DISMISSES Plaintiff's amended complaint.

---

[1] Plaintiff also brought an action challenging correspondence restrictions that followed expiration of his SAMs. Davis v. Fed. Bureau of Prisons, No. 1:15-CV-0884, (D. Colo. 2016) (holding, among other things, that "Plaintiff's contention that the allegations against him [regarding his threats at MCC] are false and fabricated is another conclusory allegation without any factual support.")

## I.  STANDARD OF REVIEW

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); see Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction.  See Fed. R. Civ. P. 12(h)(3).  While the law mandates dismissal on any of these grounds, the Court is obliged to construe pro se pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

## II.  BACKGROUND

Plaintiff Alton Davis was convicted of charges of conspiracy to commit Hobbs Act robberies of suspected drug dealers; attempting to commit such robberies; multiple counts of using and discharging a firearm, including causing two deaths; and conspiracy and intent to distribute more than 100 kilograms of marijuana.  United States v. Davis, No. 06-CR-0911 (WHP) (S.D.N.Y. Aug. 23, 2010), aff'd, 689 F.3d 179, 181 (2d Cir.

2012). He was sentenced to life imprisonment, to be followed by lifetime supervised release.[2]

A.  Davis v. Holder, No. 12-CV-2122 (D. Colo. Apr. 23, 2014):
    Challenge to SAMs

In 2012, Plaintiff filed suit in the District of Colorado naming as defendants (in their individual and official capacities) Zamaloff and O'Donnell, as well as U.S. Attorney General Eric Holder, who had approved the SAMs, and ADX Warden Berkbile who was enforcing the SAMs. Plaintiff alleged in that action that he was notified on September 10, 2010, that he would be subjected to the SAMs.[3] He challenged the imposition of the

---

[2] In Davis's pro se motion challenging his conviction under 28 U.S.C. § 2255, Davis v. United States, No. 14-CV-186 (WHP) (S.D.N.Y.) (pending), he alleged that Agent Zamaloff's testimony at trial was "false and fabricated," (Motion to Vacate ("Mot."), dated Jan. 6, 2014 [dkt. no. 1] at 33), and that AUSA O'Donnell encouraged witnesses "to intentionally testify falsely using fabricated concocted testimony . . . constructed and combined by both the agent and John O'Donnell," (Mot. at 34.) In this action, the Court addresses only Plaintiff's allegations that Zamaloff and O'Donnell fabricated evidence used in connection with the SAMs and does not address their alleged fabrications at his criminal trial.

[3] The September 10, 2010 Memorandum to Plaintiff regarding the origination of the SAMs, states that the BOP "adopted these special administrative measures based on information of your proclivity for violence. Specifically, on May 3, 2010, you were convicted of 8 criminal counts, including counts charging you with the brutal murders of two victims during two separate home-invasion robberies. In addition, there is information that, while incarcerated, you tried via phone and/or mail communication to order the murders of two federal law enforcement officials who were involved in your criminal convictions. . . ." Davis, No.1:15-CV-00884 ([dkt. no. 98-1] at 2.) Plaintiff did not attach this 2010 memorandum to his

4

SAMs and the conditions of his confinement, contending that Defendants had violated his First, Fourth, Fifth, Sixth, and Eighth Amendment rights. The SAMs expired while that action was pending.[4]

In 2014, the district court adopted the magistrate judge's recommendations in their entirety and granted Defendants' motion to dismiss. The court dismissed the individual-capacity claims for damages against Defendants O'Donnell and Zamaloff based on lack of personal jurisdiction. The court also dismissed the official-capacity claims for declaratory and injunctive relief against O'Donnell and Zamaloff as redundant of the official-capacity claims against U.S. Attorney General Holder and dismissed the official-capacity damages claims against all defendants based on sovereign immunity.

The court further held that no damages remedy under Bivens could be implied for violations of Plaintiff's First, Fifth Amendment, and Sixth Amendment rights. Davis, 2014 WL 1713429, at *9 (holding that other adequate remedies were available, such as a relief under the Federal Tort Claims Act for First

_____

complaint in Davis, No. 12-CV-2122, and the district court noted that it did not consider it in ruling on the motion to dismiss.
    [4] While the SAMs were in place, Plaintiff may have had the option of challenging the restrictions in a habeas petition, brought under 28 U.S.C. § 2241. See, e.g., Basciano v. Lindsay, No. 07-CV-421 (E.D.N.Y. 2008) (petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking an order lifting SAMS imposed on pretrial detainee).

Amendment violations or a claim for "injunctive relief against BOP officials" for a due process violation).

The court rejected all of Plaintiff's claims for injunctive relief, concluding that his allegations failed to state a claim for violations of his First, Fourth, Fifth, Sixth, and Eighth Amendment rights. Plaintiff had alleged that the SAMS were "based solely on manipulative accusations . . . bias and prejudice . . . with no justification for its imposition" and constitute "hateful racism and prejudice[d] acts." Id. at *10. The court concluded that Plaintiff failed to state a claim under the First Amendment because these conclusory allegations were insufficient to plead that the SAMs were not reasonably related to a legitimate penological interest. Id. at 10 (relying on Turner v. Safely, 482 U.S. 78, 89 (1987)). Moreover, Plaintiff had conceded that the SAMs were imposed because of his alleged threats to federal officials, which the court stated was a "coherent explanation for the SAMs," and the court rejected Plaintiff's "unsupported assertion that the SAMs were imposed solely by use of 'allegations' of these threats, rather than through 'evidence or facts' fail[ed] to rebut this legitimate penological purpose for imposing the SAMs." Davis, 2014 WL 1713429, at *10.

The court rejected Plaintiff's Fourth Amendment claim on the ground that he lacked a privacy interest in avoiding

6

searches of his cell. Id. at *11. Turning to Plaintiff's Fifth
Amendment claim, the court assumed that Plaintiff had a
protected liberty interest in avoiding imposition of the SAMs
but rejected his claim that the threats "should have been
prosecuted for as a criminal offense" or that before imposing
the SAMs, "due process clearly requires proof of guilt on any
allegation/accusation beyond a reasonable doubt." Davis, 2014
WL 713429, at *12 (rejecting due process argument, noting that
prison inmates are not entitled to the full panoply of
procedural protections that apply in a criminal case).[5]
Plaintiff also failed to plead a violation of the Equal
Protection Clause because he had not pleaded facts about any
similarly situated comparators, and his allegations that the
SAMs were inspired by "hateful racism and prejudice acts" were
wholly speculative. Id. at *13.

The district court dismissed the Sixth Amendment claim
because Plaintiff's allegations that while in ADX, he was denied
free access to his appellate attorney, lacked any factual
support. Id. at *14. Finally, the district court held that
Plaintiff's amended complaint was devoid of allegations that
defendants knew of and were deliberately indifferent to

[5] See also Wilkinson v. Austin, 545 U.S. 209, 227 (2005)
(noting that for prisoners "serving life sentences, some without
the possibility of parole, the deterrent effects of ordinary
criminal punishment may be substantially diminished").

Plaintiff's serious medical issues (bladder cancer and diabetes). The court rejected Plaintiff's claim that Defendants O'Donnell and Zamaloff were continuing to monitor his phone and mail even though "the BOP has sole jurisdiction over Plaintiff." Id. at *14. The court held that even if it assumed the truth of the allegations, Plaintiff had not invoked any constitutional or statutory right that such conduct would violate. The court granted the Defendants' motion to dismiss the complaint in its entirety. Plaintiff appealed, but on June 11, 2014, withdrew his appeal and filed a new action in Colorado.

B.    Davis v. Bureau of Prison, No.1:15-CV-00884 (WJM) (NRN) (D. Colo.): Challenge to Communication Restrictions

On April 27, 2015, Plaintiff filed a second suit in Colorado alleging that when his SAMs expired in 2014, he was placed on correspondence restrictions ("CR") "based on the same false and fabricated evidence as the initial SAMs." Davis v. Bureau of Prisons, No. 1:15-CV-0884 (WJM) (NRN) (D. Colo. Mar. 24, 2016) (Complaint ("Compl."), [dkt. no. 1] at 5-6.) The district court dismissed Plaintiff's claim that the restrictions imposed as a result of fabricated evidence violated his First Amendment rights: Plaintiff's bare assertion that the evidence against him was "false and fabricated is another conclusory allegation without any factual support." Davis, No.1:15-CV-0884 (Order Adopting Februrary 4, 2016 Recommendation ("2016

Order"), dated Mar. 24, 2016 [dkt. no. 50] at 9.)  The district

court also noted that Plaintiff had been notified of the

procedure to seek documents under the Freedom of Information Act

("FOIA"):

> The Court notes that Plaintiff is in a difficult
> situation, as it would be inherently difficult for
> Plaintiff – in his incarcerated state – to gather
> evidence which provides that he did not solicit
> murders.  However, in a response to his Administrative
> Remedy Appeal, Plaintiff was given information as to
> how he could acquire the specific information or
> documentation supporting his restrictions.  (Compl. at
> 47.)  Plaintiff was told that he may 'submit a request
> to the SIS [Special Investigative Supervisors] office'
> and if he is 'denied any information not releasable at
> the institution level, [he] may submit a request for
> release of [those] documents to the Freedom of
> Information /Privacy Act Unit in the Office of General
> Counsel.'  (Id.)  Nothing in the record indicates that
> Plaintiff submitted these requests.  As a result,
> Plaintiff's contentions as to the fraudulent nature of
> the allegations against him remain conclusory.

(2016 Order at 9-10.)

Plaintiff's First Amendment Free Exercise claim also failed

because he did not allege facts suggesting that the CRs did not

serve their purported penological purpose.  The district court

granted defendants' motion to dismiss but allowed Plaintiff to

amend his complaint.

Plaintiff's second amended complaint asserted claims for

violations of his rights under the First, Fifth, and Eighth

Amendments, and a claim under the Religious Freedom Restoration

Act ("RFRA").  Addressing this second amended complaint, the

district court held that Plaintiff's First and Eighth Amendment claims were moot insofar as the claims were based on the CRs, rather than general limitations on inmates at ADX, because the CRs had expired in March 2015, before Plaintiff filed suit, and Defendants had carried their burden of showing that the imposition of the CRs could not be reasonably expected to resume; thus, there was no live controversy. Davis, No. 1:15-CV-884 (Order Regarding Pending Motion, Recommendation, and Objection ("2017 Order"), dated Apr. 7, 2017 [dkt. no. 144] at 9.) Plaintiff's First Amendment challenge to the general limitations at the ADX failed because he did not allege facts plausibly showing that Defendants' articulated concern in prison security was irrational.

The district court rejected both of Plaintiff's Fifth Amendment procedural due process claims, holding that Plaintiff did not have a protected liberty interest in avoiding the imposition of CRs or in avoiding assignment to ADX generally.[6] (2017 Order at 21.)

The district court agreed with Defendants that Plaintiff failed to state an Eighth Amendment claim based on the general

---

[6] Plaintiff had alleged in the second amended complaint that he "was wrongfully committed to the ADX due to the imposition of the SAMs, which were 'imposed using falsely fabricated information' and that this was cruel and unusual punishment." (2017 Order at 22.)

conditions at ADX because he did not plead what conditions satisfied the objective component and "failed to assert any factual allegations supporting the subjective component, most notably, that any named defendant has a 'culpable state of mind' reflecting deliberate indifference to Plaintiff's health or safety." (2017 Order at 23.) The court also held that he failed to state a claim based on deliberate indifference to his medical needs. (2017 Order at 23-24.)

Finally, the district court denied Defendants' motion to dismiss one claim – that limitations placed on all inmates at ADX to attend congregate Jum'ah services violated Plaintiff's rights under the RFRA – and allowed to proceed this claim against the BOP for injunctive relief.[7] (2017 Order at 18-19.)

C.   Procedural Background

In his initial April 2015 complaint in this action, Plaintiff asserted claims that the SAMs imposed at the MCC in September 2010 violated: (1) his First Amendment rights of association and free exercise of religion; (2) his due process rights, because SAMs were imposed without adequate process; (3) double jeopardy, because additional punishment was being

_____

[7] The claim was later dismissed for Plaintiff's failure to prosecute. Davis, No. 1:15-CV-0884 (D. Colo. Nov. 16, 2018) (Final Judgment, dated Nov. 16, 2018 [dkt. no. 296]) (dismissing with prejudice Plaintiff's claim under RFRA), appeal pending, 18-1477 (10th Cir.).

imposed beyond his sentence; and (4) the Eighth Amendment,
because he was denied adequate medical treatment because of the
SAMs.  Plaintiff made the following argument about fabrication
of evidence:

> [T]he U.S. Attorneys Office['s] failure in producing
> this evidence that they claimed to have in their
> possession . . .  makes it extremely clear that their
> . . . use of false and fabricated accusation in order
> to get the SAM implemented was . . . unconstitutional.
> It is a fact that any call made from any federal
> institutional phone that call or calls are
> automatically recorded and preserved for legal uses.
> It is also a fact that any and every social mail
> communication mailed out of any federal institution,
> that mail is subjected to screening for any
> implications of threats and/or criminal activity,
> which is clear that if plaintiff had used the
> institutional phone or mail communications to order
> the murder of O'Donnell and ATF Agent Jason Zamaloff,
> the U.S. Attorney's Office should have this evidence
> in their possession. . . . [T]he U.S. Attorneys office
> needs to produce this evidence they claimed to have in
> their possession, and if they cannot, they should be
> order[ed] to make it clear on record that the
> accusation used to request the SAMs . . . were in fact
> falsely fabricated.

(Compl. at 2.)

By order dated May 25, 2015, the Court held that Plaintiff
was precluded from relitigating these constitutional claims
arising from the SAMs because the same claims had been fully and
fairly litigated in Davis, No. 12-CV-2122 (D. Colo.).  The Court
nevertheless granted Plaintiff leave to replead his individual-
capacity claims against Defendants Zamaloff and O'Donnell for
damages for their alleged fabrication of evidence setting in

motion the SAMs. The Court directed Plaintiff to clarify, among
other things, whether his claims for damages were brought under
the Federal Tort Claims Act ("FTCA") and, if so, whether he had
administratively exhausted such claims with the appropriate
federal agency.[8]

Plaintiff then filed the amended complaint, which includes
the following allegations: In June 2010, Plaintiff "was
sequestered from general population in the MCC New York and
subjected to total isolation." Davis, No. 1:15-CV-0884 (D.
Colo. 2018) (Amended Complaint ("Am. Compl."), dated June 23,
2015 [dkt. no. 10] at 3.)[9] On September 10, 2010, "Plaintiff was
implemented with the Special Administrative Measures SAMs by the
U.S. Attorneys Office 'SDNY' via information they claimed to
have in their possession that plaintiff used the institution['s]
phone and or mail communications to try and order the murder of
two federal law enforcement officials who were involved in

_____

[8] The FTCA requires that a plaintiff exhaust administrative
remedies within two years after a claim accrues. See 28 U.S.C.
§§ 2401, 2675. The exhaustion requirement is jurisdictional and
cannot be waived. Celestine v. Mount Vernon Neighborhood Health
Ctr., 403 F.3d 76, 82 (2d Cir. 2005). Plaintiff did not invoke
the FTCA in his amended complaint.
[9] Plaintiff stated in his initial complaint that "[a]fter
sentencing in August of 2010, plaintiff submitted a letter to
the district judge who presided over his criminal case informing
him of the unique position Plaintiff has been subjected to, and
if the ATF so-called investigation was not successful after
ninety days, he should order Plaintiff's classification to go
back to normal in order for Plaintiff's replacement back to the
general population." (Compl. at 3.)

Plaintiff[']s criminal conviction[,] which was orchestrated by AUSA John O'Donnell and ATF Agent Jason Zamaloff." (Id.)

In "October 2010, Plaintiff was transferred to the USP Florence where he was designated but was again sequestered from general population and place[d] in SHU due to the SAMs." (Id.) After Plaintiff filed his complaint in Davis, No. 12-CV-2122 (D. Colo.), the SAMs were "removed," but the District of Colorado "did not order the U.S. Attorneys Office 'SDNY' to produce the evidence it use[d] to request . . . the initial SAMs imposition." (Id. at 4.) Moreover, after the SAMs were lifted in September 2014, "the ADX Warden and the Bureau of Prison 'BOP' immediately reimposed the restriction using the fabricated allegations claiming it is believed that plaintiff's communication's mail and phone can further facilitate criminal activity, which said statement clearly stemmed solely from the false allegation." (Id. at 5.)

In the amended complaint, Plaintiff reasserts his First, Fourth, Fifth, Eighth, and Fourteenth Amendment claims[10] – challenging the procedures accompanying the imposition of the SAMs and the burdens that the SAMs imposed on his constitutional rights, and adds a claim under the Religious Freedom Restoration

---

[10] The Fourteenth Amendment is inapplicable to Plaintiff's claims, which are against federal, rather than state, actors.

Act .[11]  Plaintiff seeks damages and asks that the evidence on

which the SAMs were based be disclosed to him; seeks a

declaration that Defendants, "in fabricating false allegations,

did deceive[ ] the U.S. Attorney General in implementing the

SAMs"; and seeks an order enjoining Defendants from "their

oppressive monitoring of Plaintiff's communications [by] mail

and phone."  (Am. Compl. at 8.)

III. DISCUSSION

A.      Disclosure of Evidence for the SAMs

     Plaintiff seeks disclosure of the evidence on which the

SAMs were based (Am. Compl. at 7), which the Court construes as

a claim arising under the Freedom of Information Act , 5 U.S.C.

§ 552.  The FOIA gives members of the public a right to access

some information from federal executive agencies.[12]  Federal

courts have jurisdiction to enforce this right if a requester

can show that "an agency has (1) 'improperly;' (2) 'withheld;'

(3) 'agency records.'"  Kissinger v. Reporters Comm. for Freedom

of the Press, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C.

_____

[11] In Davis, No. 12-CV-2122 (D. Colo.), Plaintiff also
asserted a Sixth Amendment claim about access to his appellate
attorney, which the district court dismissed.  Plaintiff does
not invoke the Sixth Amendment in this action, and he alleges
the SAMs were imposed in September 2014, after Plaintiff's
August 2014 conviction and sentencing.
[12] Regulations governing SAMs explain that the notice given
to an inmate "as to the basis [for SAMs] may be limited in the
interest of prison security or safety or to protect against acts
of violence or terrorism."  28 C.F.R. § 501.3.

§ 552(a)(4)(B)).

Under the FOIA, an applicant must exhaust administrative remedies by completing the administrative appeal process before seeking judicial review. 5 U.S.C. § 552(a)(6)(A)(i)-(ii); see Sloman v. U. S. Dep't of Justice, 832 F. Supp. 63, 65-66 (S.D.N.Y. 1993). The exhaustion requirement allows the targeted agency to correct its own errors to obviate unnecessary judicial review. See McKart v. United States, 395 U.S. 185, 193-94 (1969). The FOIA establishes a relatively simple administrative process:

> Each agency, upon any request for records . . . shall--(i) determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of - (I) such determination and the reasons therefor[.]

5 U.S.C. § 552(a)(6)(A)(i); see 28 C.F.R. § 16.6(b), (c). If the request is denied, the requester may appeal the adverse determination to the head of the agency within 90 days. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).[13]

---

[13] While "[e]xhaustion of administrative remedies is normally required as a precondition to suit under the FOIA," McKevitt v. Mueller, 689 F. Supp. 2d 661, 667 (S.D.N.Y. 2010), if an agency fails to comply with the applicable time limits, a requester is deemed to have exhausted his administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i).

The district court in the district in which the requester resides, or in which the agency records are situated (or the District of Colombia), has jurisdiction to enjoin the agency from withholding agency records improperly held from the requester. 5 U.S.C.§ 552(a)(4)(B); Mamarella v. Cnty. of Westchester, 898 F. Supp. 236, 237 (S.D.N.Y. 1995) ("[T]he plain language of [the FOIA] provides that only 'agencies' are subject to the FOIA. . . the statute[] do[es] not create a cause of action against individuals.")

Plaintiff does not allege in his amended complaint that he made a FOIA request for documentation supporting his SAMs and was denied such information. See also Davis, No. 15-CV-0884 (WJM) (NRN) (D. Colo. Mar. 24, 2016) (2016 Orderat 9-10) (noting that "in a response to his Administrative Remedy Appeal, Plaintiff was given information as to how he could acquire the specific information or documentation supporting his restrictions. . . . Plaintiff was told that he may 'submit a request to the SIS office' and if he is 'denied any information not releasable at the institution level, [he] may submit a request for release of [those] documents to the Freedom of Information / Privacy Act Unit in the Office of General Counsel.") Plaintiff does not allege that he exhausted his

administrative remedies or that he was denied documents that he properly requested from the agency. Plaintiff thus does not state a claim for a violation of the FOIA, and there is no basis for the Court to enjoin any agency from withholding agency records.

B.     Fabrication of Evidence

Because the U.S. District Court for the District of Colorado dismissed Plaintiff's individual-capacity claims against Defendants Zamaloff and O'Donnell for lack of personal jurisdiction, Davis, No. 12-CV-2122, 2014 WL 1713429, at *7, it appears that Plaintiff's claims against them for damages for allegedly fabricating evidence have not been adjudicated on the merits. The Court therefore considers whether Plaintiff states a claim for damages against these Defendants under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), based on these allegations.

  1.     Availability of Bivens relief for Fabrication of Evidence

A claim under Bivens is "the federal analog to suits brought against state officials under [§ 1983]." Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009). The purpose of an implied Bivens action "is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). Because of this, a Bivens

claim will lie only against an individual in a personal capacity and not against a federal agency or against federal officials in their official capacities.  Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484-86 (1994).

In Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), the Supreme Court held that "expanding the Bivens remedy is now a 'disfavored' judicial activity," noting that for the past 30 years, the Supreme Court has "consistently refused to extend Bivens to any new context or new category of defendants." Id. at 1857.  Before the Supreme Court's decision in Ziglar, the Second Circuit held in the context of a Bivens claim, that it was "firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer." Zahrey v. Coffey, 221 F.3d 342, 355 (2d Cir. 2000) (AUSA not entitled to qualified immunity on Bivens claim alleging that he had conspired with other defendants in an investigative capacity to manufacture false evidence for use against plaintiff at trial).  But the Supreme Court has not explicitly recognized an implied Bivens remedy against federal officials under the Fifth Amendment for fabrication of evidence.[14]

---

[14] The Supreme Court recently held in the § 1983 context that "because the lower courts had treated the fabricated evidence claim as a procedural due process violation, it had "no occasion to consider the proper handling of a fabricated-

Although the availability of a _Bivens_ remedy generally "is 'antecedent' to the other questions presented," _Hernandez v. Mesa_, 137 S. Ct. 2003, 2006 (2017) (citing _Wood v. Moss_, 134 S. Ct. 2056, 2066 (2014)), the Supreme Court has endorsed "disposing of a _Bivens_ claim by resolving the constitutional question, while assuming the existence of a _Bivens_ remedy," _id._ at 2007 (noting that "this approach . . . is appropriate in many cases[] [and] [the] Court has taken [this] approach on occasion); _see also_ _Ganek v. Leibowitz_, 874 F.3d 73, 90 (2d Cir. 2017) (assuming, post-_Ziglar_, that FBI agent's allegedly false statement in warrant application could support "not only a Fourth Amendment claim for unreasonable search and seizure but also a Fifth Amendment claim for the deprivation of property without due process" if fabricated evidence causes some "further deprivation" beyond the arrest or search).[15]

---

evidence claim founded on an allegation that the use of fabricated evidence was so egregious as to shock the conscience," _i.e._, a substantive due process claim, and it expressed "no view as to what other constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence." _McDonough v. Smith_, 139 S. Ct. 2149, 2155 (2019); _see also_ _Zahrey_, 221 F.3d at 349 ("[A] pre-arrest manufacture of false evidence implicates an individual's due process rights under the Fourth Amendment, [while] a post-arrest fabrication . . . would invoke an individual's right to a fair trial under the Sixth Amendment.")

[15] Since _Ziglar_, district courts faced with some claims not already recognized by the Supreme Court have "declined to permit _Bivens_ claims to proceed because the FTCA provides an adequate alternative remedy." _Turkmen v. Ashcroft_, No. 02-CV-2307 (DLI) (SMG), 2018 WL 4026734, at *10 (E.D.N.Y. Aug. 13, 2018)

The Court therefore assumes for the purposes of this order that a Bivens remedy can be implied for a deprivation of liberty due to fabricated evidence and considers whether Plaintiff adequately pleads a claim for damages against Defendants Zamaloff and O'Donnell.

      2.    Timeliness of Plaintiff's Bivens Claim for Fabricated Evidence

The date on which a fabrication of evidence claim accrues has not been resolved in all contexts. In McDonough v. Smith, 898 F.3d 259, 265 (2018), the Second Circuit held that the limitations for plaintiff McDonough's § 1983 claim that fabricated evidence was used at his criminal trial began to run when he (1) "learned that the evidence was false and was used against him during the criminal proceedings; and (2) he suffered a loss of liberty as a result of that evidence." The Supreme Court reversed, holding that because McDonough could not bring his § 1983 fabricated-evidence claim prior to favorable termination of his prosecution, the accrual date was delayed, in McDonough's case until he was acquitted at his second trial. McDonough v. Smith, 139 S. Ct. 2149 (2019).

---

(collecting cases); but see Rodriguez v. Swartz, 899 F.3d 719 (9th Cir. 2018) ("[T]he FTCA has an 'explicit exception for Bivens claims,' allowing them to proceed against individuals.")

Here, Plaintiff's suit does not involve fabricated evidence used in a criminal prosecution, and success in this civil rights action would not impugn the validity of an existing conviction or raise concerns about parallel litigation. In this context, Plaintiff's claim arguably accrued when he had a "complete and present cause of action," id. at 2155 (citing Wallace v. Kato, 549 U.S. 384, 388 (2007), that is, when the SAMs were imposed on September 10, 2010, and he suffered a deprivation of liberty. As Plaintiff filed this action in 2015, his fabricated evidence claim is barred under the three-year limitations period, unless equitable tolling applies.[16] But because the accrual of the limitations period is not straightforward, and Plaintiff plainly fails to allege plausibly that Defendants O'Donnell and Zamaloff were personally involved in fabricating evidence, the Court proceeds to address the merits of Plaintiff's claims rather than

---

[16] Plaintiff waited nearly one year after his claims in the District of Colorado against O'Donnell and Zamaloff were dismissed for lack of personal jurisdiction before filing this action, and it thus does not appear that he showed diligence in pursuing this claim that would qualify him for equitable tolling. It also does not appear that tolling is available under New York law. See Singh v. Wells, 445 F. App'x 373, 377 (2d Cir. 2011) ("[A]lthough federal courts do not borrow state rules governing the accrual of claims, they do borrow state equitable tolling rules."); N.Y. C.P.L.R. § 205(a) (providing for tolling where an action is commenced in the wrong forum but refiled within six months of dismissal – but excluding actions that were terminated for "a failure to obtain personal jurisdiction over the defendant.")

resolving the affirmative defense of the statute of limitations
sua sponte.

### 3. Allegations of Fabrication

"It is firmly established that a constitutional right
exists not to be deprived of liberty on the basis of false
evidence fabricated by a government officer." Zahrey, 221 F.3d
at 355.[17] The Court assumes that being subjected to SAMs was an
"atypical and significant hardship" that Plaintiff had a liberty
interest in avoiding. See Sandin v. Conner, 515 U.S. 472, 484
(1995) (prison conditions that "impose atypical and significant
hardship on the inmate in relation to the ordinary incidents of
prison life" may create a liberty interest protected by the Due
Process Clause).

Plaintiff alleges in the amended complaint:

> After trial and sentencing of Plaintiff's criminal
> case, defendants O'Donnell and Zamaloff . . . then
> fabricate[d] the allegation that Plaintiff used the
> institution phone/mail communications to order their
> murder and their actions in fabricating lies in order
> to deceive authorities to achiev[e] their own selfish

---

[17] Moreover, "an intervening decision-maker will not absolve
a defendant of liability if the defendant 'misled or coerced the
intervening decision-maker such that the decision-maker's
conduct was tainted,' Bermudez v. City of New York, 790 F.3d
368, 374 (2d Cir. 2015) (quoting Wray v. City of New York, 490
F.3d 189, 195 (2d Cir. 2007)), or if the intervening decision-
maker "was simply not informed of the alleged problems with the
evidence," id. Hamilton v. City of New York, No. 15-CV-4574,
2019 WL 1452013, at *17 (E.D.N.Y. Mar. 19, 2019). Thus, the
fact that the U.S. Attorney General made the decision to
implement the SAMs does not necessarily foreclose an action
against an individual who fabricated the evidence relied upon.

> objective with no regard to whom they hurt in the
> process or who[se] job they jeopardize in doing so has
> in fact violated and continue[s] to violate
> Plaintiff's . . . [constitutional rights].

(Am. Comp. at 10.)  These allegations are wholly
speculative and conclusory and include no facts plausibly
alleging that these communications were fabricated or that
either O'Donnell or Zamaloff was personally involved in
doing so.

Plaintiff's initial complaint included additional
allegations regarding his reasoning: If the U.S. Attorney's
Office failed to disclose to him the evidence, "then they
should be order[ed] to make it clear on record that the
accusation used to request the SAMs . . . were in fact
falsely fabricated."  (Compl. at 2.)  But the regulations
governing SAMs do not require full disclosure in all cases;
the regulations authorizing SAMs explicitly provide that
information disclosed to the inmate "as to the basis [for
SAMs] may be limited in the interest of prison security or
safety . . . ."  28 C.F.R. § 501.3.[18] The failure to
disclose evidence does not give rise to any inference that
the evidence was fabricated, much less that Defendants

_____

[18] Moreover, Plaintiff has not alleged that he properly
requested this evidence by filing a request with the SIS Office
or the Freedom of Information / Privacy Act Unit in the Office
of General Counsel seeking such documents.

O'Donnell or Zamaloff were personally involved in violating his rights. Plaintiff's allegations thus fail to allege plausibly that Defendants fabricated evidence in violation of his rights.

C.      Issues Previously Litigated on the Merits[19]

The collateral estoppel doctrine serves the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or [her] privy and of promoting judicial economy by preventing needless litigation." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). This doctrine is fully applicable to civil rights claims. See Allen v. McCurry, 449 U.S. 90, 104 (1980).

The doctrine of collateral estoppel or issue preclusion forecloses a second litigation of an issue "where (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Grieve v.

---

[19] Although the Court dismisses the claims that follow on the ground that they have already been adjudicated on the merits, the Court also notes that these claims do not present a live controversy because: (1) the SAMs and CRs have been lifted; and (2) the district court in Davis, 1:15-CV-884 (ECF No. 144, at 9), accepted the BOP's statement that the prior evidence cannot justify new restrictions.

Tamerin, 269 F.3d 149, 153 (2d Cir. 2001) (citation and internal quotation marks omitted).

1.   Fifth Amendment

To the extent that Plaintiff's due process claim challenging the procedures for the imposition of the SAMs in September 2010 is distinct from his fabrication of evidence claim, it must be dismissed on the ground that it has already been adjudicated.  Plaintiff raised a claim in Davis, 1:12-CV-2122, 2014 WL 1713429 (D. Colo. Apr. 23, 2014), that the SAMs were imposed in violation of his Fifth Amendment procedural due process rights.  The magistrate judge rejected Plaintiff's allegation that the SAMs were "imposed solely by use of allegations[,] not evidence or facts[,] that he threatened federal officials" because the allegation was "too vague, general, and devoid of factual support to raise a plausible inference that the procedures attendant to the imposition and renewal of the SAMs were constitutionally inadequate" and concluded that Plaintiff failed "to state a claim for violation of his Fifth Amendment procedural due process rights."  Davis, 2014 WL 1713429 at *13.  The district court overruled Plaintiff's objections and adopted this recommendation in full, entering judgment in favor of Defendants.  Because Plaintiff had a full and fair opportunity to oppose the motion, and to object to the magistrate judge's report and recommendation, and this

rationale was the basis for the district court's decision, issue preclusion applies, and Plaintiff may not relitigate this Fifth Amendment procedural due process claim.

2.  Fourth Amendment

Plaintiff alleges, without any factual elaboration, that he asserts claims for a violation of his Fourth Amendment rights in connection with the SAMs.  (Am. Compl. at 2.)  In Davis, 2014 WL 1713429 at *11, the magistrate judge considered Plaintiff's allegation "that the SAM violates his Fourth Amendment rights because 'confinement in the special housing unit for SAM inmates [ ] consists of unreasonable searches and seizures of properties without probable cause and no security reasons.'"  The magistrate judge held that this allegation failed to state a claim for relief because "the Fourth Amendment does not establish a right to privacy in prisoners' cells."  Id. Plaintiff thus cannot relitigate this Fourth Amendment claim because it was actually litigated and necessarily decided against him in prior litigation where he had a full and fair opportunity to litigate.

Even if the claim in this amended complaint differs from the claim already litigated, Plaintiff's allegations fail to state a claim for a violation of his rights under the Fourth Amendment because he pleads no facts in connection with this claim.

27

3. Eighth Amendment

Plaintiff alleges that the SAMs have violated his rights under several constitutional provisions, including the Eighth Amendment. (Am. Compl. at 3.) Plaintiff's Eighth Amendment claims arising from both the imposition of the SAMs and his assignment to ADX have already been rejected on the merits. See Davis, No. 14-CV-2022 (dismissing claim that "SAMS violated his right to be free from cruel and unusual punishment"); Davis, No. 1:15-CV-884 (2017 Order at 22) (rejecting the claim that Plaintiff was "wrongly committed to the ADX due to the imposition of SAMs," in violation of the prohibition on Cruel and Unusual Punishment).

Even if Plaintiff's Eighth Amendment claims had not already been adjudicated, Plaintiff does not plead any facts in the amended complaint about the conditions of his confinement while he was in New York. And any claims for injunctive relief were moot as of the time that Plaintiff filed his initial complaint because he had already been transferred to the ADX in Colorado. The Court therefore dismisses Plaintiff's Eighth Amendment claim for failure to state a claim on which relief could be granted.

D. Religious Freedom Restoration Act

In his amended complaint, Plaintiff alleges that Defendants violated his rights under the RFRA, which prohibits the federal government from "substantially burdening" a person's exercise of

religion unless the government's action (1) furthers a compelling governmental interest; and (2) is the least restrictive means of furthering that interest. Gonzales v. O'Centro Espirata Benificiente Uniao do Vegetal, 546 U.S. 418 (2006).

Because the RFRA does not waive the federal government's immunity from suit for damages, only declaratory and injunctive relief are available under the RFRA. See Tanvir v. Lynch, 128 F. Supp. 3d 756, 780 (S.D.N.Y. 2015) (holding that the RFRA "is most naturally read to exclude damages against the government"); accord Oklevueha Native Am. Church of Haw., Inc. v. Holder, 676 F.3d 829, 840 (9th Cir. 2012) (holding that "RFRA does not waive the federal government's sovereign immunity from damages"); Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (same).

Plaintiff is no longer at a facility within this Court's jurisdiction for purposes of issuing injunctive relief, and the RFRA does not provide for damages. Even if Plaintiff's amended complaint presented some live controversy, Plaintiff does not identify his religion or plead any facts showing what Defendants Zamaloff and O'Donnell personally did or failed to do that violated his rights under RFRA. The Court therefore dismisses Plaintiff's claim under the RFRA for failure to state a claim on which relief can be granted.

IV. CONCLUSION

The Clerk of Court is directed to mail a copy to Plaintiff, and note service on the docket. Plaintiff's amended complaint, filed in forma pauperis under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:

      New York, New York
      December 12, 2019

      _____
      LORETTA A. PRESKA
      Senior United States District Judge